IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TROY L. MEZA,                                          Case No. 6:15-cv-02181-MA

                Plaintiff,                         OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

RICHARD F. McGINTY
P.O. Box 12806
Salem, OR 97309

      Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

LARS J. NELSON
Special Assistant United States Attorneys
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Troy L. Meza seeks judicial review of the final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-403, and application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, I affirm the Commissioner's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 12, 2009, Plaintiff protectively filed for SSI disability benefits. On November 16, 2009, Plaintiff protectively filed for DIB benefits. In both applications Plaintiff alleged disability beginning May 18, 2001. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). Plaintiff received an unfavorable decision from ALJ Richard Say on November 4, 2011. Plaintiff submitted new evidence to the Appeals Council, but the Appeals Council denied Plaintiff's request for review. Plaintiff appealed to the District Court and the case was remanded to consider the new evidence, reconsider Plaintiff's RFC, and reconsider the hypothetical posed to the VE.

On remand, ALJ Dan R. Hyatt held a hearing on October 1, 2014. After the hearing, a Cooperative Disability Investigation Unit ("CDIU") fraud investigation was performed. Plaintiff's case was then assigned to ALJ Steve Lynch due to ALJ Hyatt's retirement. ALJ Lynch conducted a hearing on May 4, 2015 and ordered a consultative examination. Tr. 280, 519, 540. On July 30, 2015, ALJ Lynch conducted a supplemental hearing at which Plaintiff appeared with his attorney and testified. Special Agent Steve Armbruster with CDIU, David Davis, Plaintiff's parole officer,

2 - OPINION AND ORDER

and Paul Morrison, a Vocational Expert, also testified at the July 30, 2015 hearing.  On August 28, 2015, ALJ Lynch issued an unfavorable decision.  Tr. 258.  The Appeals Council denied Plaintiff's request for review, and therefore, the ALJ's August 2015 decision became the final decision of the Commissioner for purposes of review.

Plaintiff was born on May 16, 1975, and was 26 years old on the alleged onset of disability date.  Plaintiff completed high school and has worked at various jobs, but his earnings did not rise to the level of substantial gainful activity.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.  Each step is potentially dispositive.  The claimant bears the burden of proof at steps one through four.  *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy.  *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2005. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset of disability.  At step two, the ALJ found that Plaintiff had the following severe impairments:  learning disorder and attention deficit hyperactivity disorder ("ADHD").  At step three, the ALJ found that Plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: Plaintiff has limited reading, writing, and math skills; he is limited to unskilled work and routine tasks involving superficial interaction with the public and co-workers but no close cooperation or coordination; and he should not perform fast-paced work.

At step four, the ALJ found that Plaintiff has no past relevant work. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as cleaner, janitor, and scrap sorter. Accordingly, the ALJ concluded that Plaintiff has not been under a disability under the Social Security Act from May 18, 2001 through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, Plaintiff contends the following errors were committed: (1) the ALJ took actions beyond the scope of Judge Mosman's remand order; and (2) the RFC fails to encompass all of his functional limitations. The Commissioner responds that the ALJ did not err, or alternatively, that Plaintiff has not demonstrated harmful error.

## STANDARD OF REVIEW

The District Court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or

detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014);

*Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be

upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v.*

*Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the

Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its

judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001);

*Garrison*, 759 F.3d at 1010.

## DISCUSSION

### I.   The ALJs Did Not Violate the Law of the Case or Rule of Mandate

Plaintiff alleges that the ALJ took three actions that fell outside the scope of the remand

order: (1) ALJ Hyatt ordered the CDIU report; (2) ALJ Lynch admitted and considered the CDIU

report and consultative examination performed by Paul S. Stoltzfus, Psy.D.; and (3) the ALJ found

Plaintiff's ADHD and learning disorder severe impairments at step two. Pl. Br. at 7-8, ECF No. 14.

Plaintiff contends the ALJ's actions in obtaining new evidence and making new findings violate the

rule of mandate and law of the case doctrines.

In support of his applications for SSI and DIB, Plaintiff did not submit any medical evidence

from his treating providers.[1] Tr. 17. Instead, Plaintiff submitted a neuropsychological evaluation

conducted by one-time examining physician Paul E. Guastadisegni, Ph.D., dated September 15,

2009. Tr. 200-16. Dr. Guastadisegni diagnosed Plaintiff with cognitive disorder not otherwise

---

[1] There is evidence in the record that Plaintiff attends weekly sex offender treatment
therapy sessions. Tr. 200, 239. However, Plaintiff's therapy records were not made part of the
administrative record. Tr. 239. Additionally, there is reference to treating providers Hung Tran,
M.D., and Anna Techentin, M.D., however, no records from either provider are included in the
record before me. Tr. 201, 532.

specified, depression not otherwise specified, anxiety disorder not otherwise specified, ADHD (combined type) and personality disorder not otherwise specified with Cluster B traits. Tr. 216. Notably, Dr. Guastadisegni opined that Plaintiff required a "structured environment that has clear directions and allows him to process and move at his own pace." Tr. 213. However, ALJ Say discounted much of Dr. Guastadisegni's opinion and found that Plaintiff could perform a full range of work at all exertional levels with some limitations, and therefore determined that Plaintiff was not disabled. Tr. 16.

After ALJ Say's unfavorable decision, Plaintiff was referred by his attorney for a neuropsychological evaluation performed by David M. Freed, Ph.D., dated April 4, 2012. Tr. 245. Plaintiff submitted Dr. Freed's 2012 evaluation to the Appeals Council. Tr. 4-5. That evaluation was made part of the administrative record, but the Appeals Council declined Plaintiff's request for review.[2] Tr. 1-6.

On appeal to the District Court, the Honorable Michael W. Mosman remanded the case for the ALJ to consider Dr. Freed's 2012 neuropsychological evaluation. Tr. 355. Judge Mosman stated:

> Now, I'm not suggesting that therefore we know exactly what to do with Dr. Freed's evaluation and that it should be built into the RFC. I'm simply noting that I do find now that this new evidence creates a problem for which remand is appropriate.
>
> So I'm ordering remand to evaluate this new evidence. It's kind of an unfortunate system where it happens this way, but there we are. And specifically to

---

[2] It appears that Plaintiff was examined by David M. Freed, Ph.D. on May 18, 2011 and June 1, 2011, several months prior to ALJ Say's unfavorable opinion. Dr. Freed prepared an evaluation dated June 9, 2011. Tr. 532. Plaintiff does not offer an explanation as to why Dr. Freed's 2011 evaluation was not provided to either ALJ Say or the Appeals Council. Tr. 4-5, 245.

determine if anything in Dr. Freed's post-hearing evaluation, including impulse control, in light of all the other evidence in the case, merits amending the RFC and therefore amending the hypothetical to the VE. That's the scope of the order.

Tr. 355. The Appeals Council subsequently vacated ALJ Say's 2011 decision and remanded the case to an ALJ to "evaluate the new evidence . . . from David M. Freed, Ph.D.," and ordered that the ALJ "offer the claimant the opportunity for a hearing and address the additional evidence submitted, take any further action needed to complete the administrative record and issue a new decision." Tr. 366.

On remand, ALJ Hyatt conducted a hearing on October 1, 2014. Tr. 311. On December 2, 2014, the Salem disability office received an allegation that Plaintiff was attempting to obtain disability benefits fraudulently. Tr. 525. The fraud allegation was referred to the CDIU, who undertook an investigation and generated a report dated February 5, 2015. Tr. 258, 525-531. ALJ Hyatt retired before he issued a decision and the case was referred to ALJ Lynch for resolution. Tr. 280.

ALJ Lynch conducted a hearing on May 4, 2015, at which he observed that Plaintiff's SSI claim necessarily involves a finding of ongoing disability, and indicated that he had no records in the file dated after 2011. Tr. 280. Therefore, ALJ Lynch ordered Plaintiff to undergo a consultative exam to further evaluate Plaintiff's SSI allegations. Tr. 266, 280, 519. Paul S. Stoltzfus performed a psychodiagnostic evaluation on June 11, 2015. Tr. 266, 280, 519. At the July 30, 2015 supplemental hearing, Plaintiff objected to admission of the CDIU report. Tr. 289. ALJ Lynch overruled the objection, and considered both the CDIU report and Dr. Stoltzfus's 2015 evaluation in the unfavorable August 28, 2015 decision.

In the current proceeding, Plaintiff argues that the ALJ erred in obtaining new evidence and making new step two findings because doing so is beyond the scope of Judge Mosman's remand

7 - OPINION AND ORDER

order.  According to Plaintiff, ALJ Hyatt exceeded the scope of remand by ordering the CDIU investigation and ALJ Lynch exceeded the scope of remand by ordering the consultative examination by Dr. Stoltzfus.  Pl.'s Br. at 7-8, ECF No. 14.  Plaintiff contends that under Judge Mosman's remand order, the ALJ was solely to consider Dr. Freed's opinion and its potential impact on the RFC and hypothetical to the VE.  Without citing to legal authority, Plaintiff appears to suggest that the ALJ failed to comply with the law of the case doctrine and the rule of mandate.  I disagree.

The Ninth Circuit recently addressed the law of the case doctrine and the rule of mandate in social security cases in *Stacy v. Colvin*, 825 F.3d 563, 567-68 (9th Cir. 2016).  According to the *Stacy* court, "[t]he law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Id.* at 567.  The court also observed that "[t]he doctrine is concerned primarily with efficiency, and should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Id.*  A district court's decision to apply the law of the case doctrine is discretionary. *Id.*

The *Stacy* court also addressed the rule of mandate, which it described as "similar to, but broader than, the law of the case." *Id.* at 567-68.  Under the rule of mandate, a "'district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it.'" *Id.* at 568 (quoting *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)).  However, the district court may decide matters "not foreclosed by the mandate." *Id.* (internal quotation omitted).  As the *Stacy* court observed, the rule of mandate permits district courts to "reexamine any issue of remand that is not inconsistent with the mandate." *Id.*

In *Stacy*, the claimant appealed his denial of social security benefits to the district court two

times. *Id.* at 566. The first appeal resulted in a stipulated remand for reconsideration of medical evidence, the claimant's subjective allegations, and to obtain any additional necessary evidence, among other actions. *Id.* The second appeal resulted in a remand to consider lifting restrictions erroneously omitted from the RFC, to reconsider step five, and to otherwise comply with the prior remand. *Id.* at 566-67. Following the second remand, at an ALJ hearing, the claimant testified for the first time that 70 to 75 percent of his previous work was supervisory in nature. Based on that testimony, the VE testified that the claimant could perform his past relevant work as a supervisor. *Id.* at 567. The ALJ denied benefits at step four, determining that the claimant could perform his past relevant work. *Id.* On appeal for the third time, the district court concluded that the ALJ's step four findings did not violate the rule of the case or the rule of mandate. *Id.*

On appeal to the Ninth Circuit, the *Stacy* court agreed. Although two ALJs previously determined that the claimant could not perform his past relevant work, on remand, new probative evidence was presented bearing directly on that finding. Thus, the Ninth Circuit concluded that the new testimony directly supported the ALJ's new finding, and therefore the district court did not abuse its discretion in declining to apply the law of the case doctrine. *Id.* at 567. Similarly, the *Stacy* court concluded that the remand orders were expansive, and thus, the ALJ did not violate the rule of mandate in making new step four findings. The Ninth Circuit reasoned that by asking the "ALJ to correct the [claimant's] RFC, Judge Mosman also impliedly instructed the ALJ to reconsider step 4 and determine whether someone with that corrected RFC could perform [the claimant's] past work." *Id.* at 568. The *Stacy* court concluded that it was a logical construction of the remand order to conduct a hearing, take testimony from the claimant, and inquire about past work in order to correctly formulate the RFC. Thus, the ALJ did not exceed her authority under the broad remand

9 - OPINION AND ORDER

order and did not violate the rule of mandate. *Id.* at 569.

In the instant proceeding, Plaintiff appears to suggest that ALJ Lynch violated the law of the case by making new step two findings. In the initial hearing, ALJ Say found at step two that Plaintiff had the severe impairment of fetal alcohol syndrome, and that his ADHD was medically determinable, but non-severe based on the examination submitted by Dr. Guastadisegni. Tr. 14-15. On remand, ALJ Lynch revisited the step two findings and concluded that Plaintiff's ADHD and learning disorder are severe impairments based upon Dr. Freed's 2012 evaluation. Tr. 261-62.

As discussed in *Stacy*, the law of the case doctrine "should not be applied when the evidence on remand is substantially different." *Stacy*, 825 F.3d at 567. Here, on remand numerous pieces of evidence came to light, including Dr. Freed's 2012 evaluation that served as the basis for the remand. Tr. 355. Additionally, as ALJ Lynch indicated, Dr. Freed submitted a letter dated May 23, 2012 explaining why he did not diagnose fetal alcohol syndrome, including that the DSM-IV does not contain specific diagnostic criteria for fetal alcohol syndrome. Tr. 254, 261. The ALJ also found that Dr. Stoltzfus's diagnoses of ADHD and math disorder were consistent with Dr. Freed's diagnoses, also supporting the new step two findings. Tr. 261. ALJ Lynch was presented with new, probative evidence on remand that directly related to Plaintiff's medically determinable impairments at step two. ALJ Lynch's step two findings are supported by substantial evidence in the record as a whole. Accordingly, ALJ Lynch did not err, and I decline to apply the law of the case.

Plaintiff also seemingly contends that ALJ Hyatt and ALJ Lynch violated the rule of mandate by obtaining new evidence. Plaintiff argues that obtaining new evidence was beyond the scope of Judge Mosman's remand order. Again, the analysis in *Stacy* is instructive.

As in *Stacy*, the instant case was remanded for consideration of new evidence and its

10 - OPINION AND ORDER

potential impact on the RFC, "in light of all the other evidence in the case." Tr. 355; *Stacy*, 825 F.3d at 568. To be sure, the Appeals Council ordered the ALJ to consider the evidence from Dr. Freed, as well as offer Plaintiff a new hearing, address the additional evidence, and "take any further action needed to complete the administrative record and issue a new decision." Tr. 366. As in *Stacy*, none of the actions undertaken by ALJ Hyatt and ALJ Lynch on remand are inconsistent with the mandate. Contrary to Plaintiff's suggestion, there is nothing in the record to indicate that ALJ Hyatt initiated the CDIU fraud investigation. Tr. 525. Rather, the record reflects that the CDIU investigation appears to have originated with the Salem disability office. Tr. 525. It is a logical construction of the remand order to conduct a new hearing to consider the CDIU report and new evidence from Dr. Freed.

Additionally, as ALJ Lynch observed, a finding of disability under SSI requires establishing ongoing disability. Tr. 280. When ALJ Lynch inquired whether more recent records were available, Plaintiff's counsel informed him that none existed, thereby necessitating the consultative examination with Dr. Stoltzfus to update the record. Tr. 281-82. Again, obtaining new evidence to consider Plaintiff's RFC as it pertains to Plaintiff's SSI application is certainly consistent with the mandate. *Stacy*, 825 F.3d at 568. Given the broad nature of the remand instructions, nothing prevented the ALJs from conducting new hearings, taking new evidence (including additional evidence from Dr. Freed), and considering the CDIU report and the consultative examination in order to fashion the RFC. Accordingly, the ALJ did not exceed his authority and did not violate the rule of mandate.

## II.    The ALJ's Findings are Supported by Substantial Evidence

Plaintiff's remaining challenges ultimately turn on whether the ALJ's decision is supported

by substantial evidence. Plaintiff's argues that: (1) the step two findings were not authorized and are ambiguous; (2) the ALJ improperly evaluated the opinions of Drs. Freed, Guastadisengi, and Stoltzfus; and (3) the ALJ improperly considered the lay testimony. Plaintiff's arguments are unavailing.

### A.    The ALJ Did Not Err at Step Two

ALJ Lynch found that Plaintiff's ADHD and learning disorder are severe impairments at step two. "At step two of the five-step inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996). As discussed above, the ALJ's step two findings are wholly supported by substantial evidence in the record.

To the extent that Plaintiff argues that the ALJ was required to amend the RFC assessment based on the new findings at step two, his argument is misplaced. First, an RFC is the most a claimant can do despite his limitations, and is based upon consideration of all medically determinable impairments – severe and non-severe. *See* 20 C.F.R. §§ 404.1545, 416.945. Second, there is no requirement that a step two finding must result in any specific limitation reflected in the RFC, and Plaintiff cites no authority for such a proposition. Plaintiff's argument is more properly directed at the ALJ's RFC and is addressed below. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (noting that a step two error is harmful only if claimant's alleged functional limitations are not accounted for in the RFC). Similarly, Plaintiff's conclusory argument that the ALJ's step two finding is ambiguous is without merit. "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)

(quoting *Smolen*, 80 F.3d at 1288)).  After a careful review of the record, I conclude that there are

no ambiguities or inadequacies that would trigger the ALJ's duty to develop the record.

### B.    *The ALJ Did Not Err in Assessing the Medical Evidence*

#### 1.    *Standards*

The ALJ is responsible for resolving conflicts in the medical record, including conflicts

among physicians' opinions.  *Carmickle, v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir.

2008).  To reject the uncontroverted opinion of an examining physician, the ALJ must present clear

and convincing reasons.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  If an examining

doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and

legitimate reasons.  *Garrison,* 759 F.3d at 1012; *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir.

2014).  When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not

supported by clinical findings, or is brief or conclusory.  *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th

Cir. 2014).  In addition, a doctor's work restrictions based on a claimant's subjective statements

about symptoms are reasonably discounted when the ALJ finds the claimant less than fully credible.

*Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson*, 359 F.3d at 1195.

#### 2.    *Dr. Freed's Opinions*

Dr. Freed conducted two neuropsychological evaluations, the first dated June 9, 2011 and

the second dated April 4, 2012.[3]  In Dr. Freed's 2011 evaluation, he indicated that Plaintiff was

---

[3] Dr. Freed's 2011 and 2012 opinions are contradicted by nonexamining physicians
Robert Henry, Ph.D., and Sandra L. Lundblad, Psy.D., who opined that Plaintiff is capable of
performing simple work, routine tasks and instructions, in a predictable environment with
assistance in setting independent and realistic goals, with infrequent public contact and co-
worker contact. Tr. 217, 233, 239. Therefore, the ALJ was required to provide specific and
legitimate reasons based on substantial evidence in the record to discount the examining
physician's opinions. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2001).

referred by his treating provider for evaluation of his alleged cognitive, behavioral, and academic problems. Tr. 532. Plaintiff reported to Dr. Freed that he has been diagnosed previously with ADHD, PTSD, and was seen at the Psychiatric Crisis Center with concerns of bipolar disorder. Tr. 532-33. Plaintiff reported to Dr. Freed that his biological mother used alcohol and drugs during pregnancy, and that he was placed in foster care, and adopted at age three. Tr. 533. Plaintiff reported that he struggled in school, was diagnosed with learning disorders, and had significant behavioral problems. Tr. 533. Plaintiff reported to Dr. Freed that he frequently loses his employment (having worked 45 different jobs), denied alcohol or drug use, and previously was prescribed Ritalin, Zoloft, and Wellbutrin. Plaintiff also reported that he has been convicted of multiple offenses with minor women, has been incarcerated, and is a registered sex-offender. Tr. 534.

On testing, Plaintiff scored 25 out of 30 on the Mini-Mental State Exam ("MMSE"), obtained a Full Scale IQ of 104 (average range), and academic testing revealed some learning disabilities. Tr. 535. Dr. Freed observed that Plaintiff has some attention and concentration impairments, has moderately impaired memory, he displayed above average language skills, average motor skills, and reported depressive symptoms. Tr. 535-36. Dr. Freed diagnosed Major Depressive Disorder, recurrent, severe, PTSD, ADHD, Intermittent Explosive Disorder, Mathematics Disorder, and Disorder of Written Expression. Dr. Freed opined that Plaintiff should consider a trial of antidepressant medication, increased physical activity, and individual counseling to combat his severe depressive symptoms. Dr. Freed also noted that Plaintiff should consider additional vocational education to improve his self-esteem and acquire additional employable skills, indicating that Plaintiff may benefit from academic accommodations such as note-taking, additional testing

14 - OPINION AND ORDER

time, and flexibility. Tr. 538.

In Dr. Freed's 2012 evaluation, he discussed Plaintiff's background, then observed that Plaintiff's grooming and hygiene were good, he appeared depressed with a restricted range of affect, and was occasionally tearful. Tr. 247. On testing, Plaintiff obtained a 30 out of 30 on the MMSE, obtained a Full Scale IQ of 93 (average range), demonstrated some difficulty with concentration during testing, copied simple geometric figures easily, had normal language skills, had mild to moderate memory impairment, and possessed average motor skills. Tr. 248. On the MMPI-2, Plaintiff obtained a valid profile, with intense anxiety and depressive symptoms. Tr. 248. Dr. Freed's 2012 diagnoses were unchanged from 2011. Tr. 249. Dr. Freed observed that Plaintiff was not currently prescribed any antidepressant medication, and assumed that Plaintiff did not respond to previous treatment. Tr. 250. Dr. Freed indicated that Plaintiff's "depressive and anxious symptoms represent a significant impairment to social and occupational functioning." Tr. 250. Dr. Freed noted that Plaintiff reported having suffered a traumatic brain injury and that this "injury has contributed to the reported behavioral and mood problems." Tr. 251. Dr. Freed opined that "Due to the confluence of angry outbursts, limited vocational skills, and chronic mental health conditions, . . . [Plaintiff] is unable to maintain consistent employment." Tr. 251.

Dr. Freed also completed a Functional Assessment Form dated April 16, 2012, in which he opined that Plaintiff is moderately limited in his ability understand and remember detailed instructions, has several moderate limitations with sustained concentration and persistence, social interaction, and adaption. Tr. 252-53.

In the 2015 decision, ALJ Lynch thoroughly discussed Dr. Freed's 2011 and 2012 evaluations and provided several reasons for discounting Dr. Freed's opinion that Plaintiff is unable

15 - OPINION AND ORDER

to maintain consistent employment.  First, the ALJ noted that Dr. Freed's opinions are inconsistent with his own findings and the record as a whole.  Inconsistency between a treating physician's opinion and his own treatment notes is a specific and legitimate reason for rejecting that opinion. *Ghanim*, 763 F.3d at 1161.  Likewise, inconsistency between a Plaintiff's opinion and the record as a whole is a specific and legitimate reason to discount a physician's opinion. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  As the ALJ discussed, Dr. Freed's mental status examination found problems with understanding and memory, and sustained concentration and persistence, yet Plaintiff scored a 30 out of 30 on the Mini Mental Status Examination, indicating no cognitive deficits.  Tr. 248, 268.  Where a medical opinion is contradicted by the examiner's own notes, an ALJ may discount the opinion. *Bayliss*, 427 F.3d at 1216.  And, the ALJ observed that in 2012, Dr. Freed opined that Plaintiff's depressive and anxious symptoms were refractory to treatment.  However, as the ALJ correctly indicated, Plaintiff had not received any treatment for depression and anxiety and later denied such symptoms during Dr. Stoltzfus's examination.  Tr. 246, 250; *see also* Tr. 542-43.  The ALJ's findings in this regard are wholly supported by substantial evidence.  I conclude that the inconsistencies between Dr. Freed's testing and Dr. Freed's opinion, and their inconsistency with record as a whole provide a specific and legitimate basis for partially discounting Dr. Freed's opinion.

Second, the ALJ reasonably found that Plaintiff's reported activities conflicted with Dr. Freed's opinion.  An ALJ may discount a physician's opinion where it is inconsistent with a claimant's activities of daily living. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming the ALJ's rejection of treating physician's opinion where inconsistent with the claimant's daily activities).  Dr. Freed noted a number of moderate limitations in the Functional Assessment

Form including memory functioning, the ability to carry out instructions, and the ability to concentrate. Tr. 252. Dr. Freed also noted Plaintiff's inability to interact with the general public and an impairment in occupational functioning. Tr. 250, 253. As the ALJ discussed, Plaintiff engages in numerous activities that indicate greater functioning that alleged. The ALJ detailed that Plaintiff had a job waiting tables, ran an advertising business called West Coast Media Solutions, and volunteered at a drop-in shelter. Tr. 530. Plaintiff's advertising business sold advertising on behalf of radio stations and sought clients *via* Craigslist. Tr. 530. Plaintiff also had a business registered in his name, to his mailing address, known as Oregon Wedding Loft. Tr. 525. Plaintiff "described a typical day as doing his advertising business, [waiting tables], and frequenting local coffee shops." Tr. 530. As the ALJ discussed, a day before Dr. Stoltzfus's evaluation, Plaintiff reported that he worked at a church pruning bushes and doing lawn maintenance, and he was working part-time for the Public Affairs council taking surveys *via* phone. Tr. 541, 545. The ALJ's findings are fully supported by substantial evidence in the record.    Based on this multitude of activities, the ALJ reasonably found Dr. Freed's opinion inconsistent with his activities. Accordingly, this rationale provides another specific and legitimate basis upon which to discount Dr. Freed's opinion.

Finally, the ALJ reasonably discounted Dr. Freed's opinion because it relied upon Plaintiff's subjective reports. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible.") (internal quotation marks omitted). Critically, Plaintiff does not challenge the ALJ's adverse credibility determination. Nevertheless, the court has examined the ALJ's negative credibility assessment and readily concludes that it is supported by substantial evidence in the record as a whole. The ALJ cited specific, clear and convincing reasons,

including but not limited to the lack of any underlying treatment records and extensive reported daily activities, to support it. Accordingly, the ALJ appropriately discounted Dr. Freed's opinion because it was based on Plaintiff's subjective complaints. In short, the ALJ provided several specific and legitimate reasons for discounting Dr. Freed's opinion; the ALJ did not err.

### 3.   Dr. Guastadisegni's Opinion

Dr. Guastadisegni completed a neuropsychological evaluation of Plaintiff on October 13, 2009. Tr. 200. Dr. Guastadisegni noted that Plaintiff reported he struggled with behavior, impulsivity, and social judgment. Dr. Guastadisegni indicated that Plaintiff has past legal troubles also impacting his ability to find work. Tr. 200-01. Plaintiff reported to Dr. Guastadisegni that he had difficulty in school, was on an IEP, and repeated the sixth grade. Tr. 204. Dr. Guastadisegni noted that Plaintiff completed an eight-week training course with the Radio Council, but had difficulty completing community college courses. Tr. 204. Plaintiff reported that he took Ritalin, but indicated he was not then taking any medications. Plaintiff informed Dr. Guastadisegni that he was working with Dr. Harrington for his emotional detachment disorder. Tr. 205. Dr. Guastadisegni indicated that Plaintiff was trying to run an advertising business for radio, and the longest position he has held was for two years as a server at a restaurant. Tr. 207.

On examination, Dr. Guastadisegni completed a number of tests, including the WAIS-III, Dells Kaplan Executive Function System, Rey Complex Figure Test, Auditory Verbal Learning Test, MMPI-2, Wisconsin Card Sorting Test, and Adaptive Behavior Assessment System. Tr. 200. Dr. Guastadisegni observed that Plaintiff has a normal IQ, with intact verbal abilities and presents well, however, he has low average perceptual organization abilities, and struggles with visual information and processing speed. Tr. 212. Dr. Guastadisegni indicated that Plaintiff has difficulty adapting,

transitioning, and integrating feedback, and that he became overwhelmed when task complexity increased. Tr. 212. Dr. Guastadisegni opined that Plaintiff has a "cognitive disorder that impacts his ability to learn, sustain attention, and to make adaptions and transitions" and that he "should be considered for disability benefits due to Fetal Alcohol Effects." Tr. 213. Dr. Guastadisegni further opined that Plaintiff needs to have a "structured environment that has clear directions and allows him time to process and move at his own pace." Additionally, Dr. Guastadisegni indicated that Plaintiff needs extra breaks, repetition, and reinforcement. Tr. 213-14.

In the decision, ALJ Lynch thoroughly discussed Dr. Guastadisegni's opinion and gave it less than great weight. Tr. 268. The ALJ provided several specific and legitimate reasons for discounting Dr. Guastadisegni's opinion. First, the ALJ reasonably found that Dr. Guastadisegni's mental status examination conflicted with his opinion. *Bayliss*, 427 F.3d at 1216 (ALJ may discount a medical opinion that is internally inconsistent). Tr. 268. Dr. Guastadisegni opined that Plaintiff had a cognitive disorder that impacted Plaintiff's ability to learn, and that Plaintiff needed a structured environment that permitted him to work at his own pace. Tr. 213. Yet, as the ALJ noted, Dr. Guastadisegni's examination findings presented a mixed picture of skills. For example, Plaintiff received a high average score in the Tower Test suggesting abilities related to rule learning and establishing and maintaining an instructional set. Tr. 209. Plaintiff's overall score on the Wisconsin Card Sorting Test was normal and he had an average IQ. Tr. 212.

Second, the ALJ found that Plaintiff's activities conflicted with Dr. Guastadisegni's opinion, establishing greater functioning than assessed. *Rollins*, 261 F.3d at 856; Tr. 268. Dr. Guastadisegni opined that Plaintiff needed structure and guidance when completing tasks. Tr. 214. However, as discussed above, at the time of the CDIU report Plaintiff had a job waiting tables, ran an advertising

19 - OPINION AND ORDER

business, and volunteered at a drop-in shelter. Tr. 530. At the time of Dr. Stoltzfus's evaluation, Plaintiff reported that he had worked at a church doing lawn maintenance, and he was working part-time taking surveys *via* phone. Tr. 541, 545. As the ALJ discussed, Plaintiff was capable of living independently, cooking, cleaning, shopping, and gardening. Based on these activities, the ALJ reasonably found Plaintiff engaged in activities that indicate greater functioning than assessed by Dr. Guastadisegni, and could discount the opinion on this basis. *Rollins*, 261 F.3d at 856.

Thus, the ALJ reasonably found that, consistent with ALJ Say's previous findings, that Dr. Guastadisegni found that Plaintiff had the greatest difficulty with jobs that require high skill levels and multi-tasking, and therefore his opinion was consistent with an RFC limiting Plaintiff to unskilled work and routine tasks. The ALJ accurately summarized Dr. Guastadisegni's opinion, and reasonably concluded that the RFC adequately accounted for the credited limitations. The ALJ's findings are wholly supported by substantial evidence, is a rational interpretation of the record, and will not be disturbed. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (stating that "[e]even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.")

### 4.   *Dr. Stoltzfus's Opinion*

On June 11, 2015, Dr. Stoltzfus conducted a psychodiagnostic evaluation on behalf of DDS. Dr. Stoltzfus conducted a clinical interview, a mental status examination, a symptom checklist, and reviewed Dr. Freed's 2011 examination and Dr. Guastadisegni's October 2009 evaluation. Plaintiff reported to Dr. Stoltzfus that he had been living at the Mission, and no longer had a girlfriend. Tr. 541. Dr. Stoltzfus indicated that Plaintiff reported longstanding difficulty with employment, that he currently works part-time taking surveys on the phone for the Public Affairs Council. Plaintiff

informed Dr. Stoltzfus that he becomes stressed and mentally exhausted. Tr. 541. Dr. Stoltzfus indicated that Plaintiff reported he was seeing a mental health counselor, suffers from PTSD, rated his depression at a two out of ten, and his stress at a two out of ten. Tr. 543. Dr. Stoltzfus noted that based on Plaintiff's self-report, he was highly likely to be ADHD, reporting a significant degree of impulsivity, hyperactivity, fidgeting, and is distracted by those around him, has difficulty getting started, and has difficulty with details. Tr. 543.

On examination, Dr. Stoltzfus found that Plaintiff was oriented times three, and his immediate and delayed recall were intact. Plaintiff could repeat five digits forward very slowly, and became tearful when unable to repeat five digits backwards. Tr. 544. Plaintiff could count backwards from 20, could spell "world" forward, but not backward, and could perform some basic math calculations. Tr. 545. Dr. Stoltzfus diagnosed ADHD, mathematics disorder, PTSD traits, and fetal alcohol syndrome, per neurocognitive evaluation. Tr. 545. Dr. Stoltzfus indicated that Plaintiff presented with a positive outlook and tended to downplay difficulties, and that he reported activies requiring him to be productive for an extended time or requiring mental effort become exhausting and his mind wanders. Tr. 546.

Dr. Stoltzfus completed a Medical Source Statement in which he indicated Plaintiff suffers moderate limitations in the ability to understand and remember complex instructions, and had marked limitations to carry out complex instructions and make complex work-related judgments. Dr. Stoltzfus found Plaintiff had no limitations to understand, remember, and carry out simple instructions and make simple work-related judgments. Tr. 547. Additionally, Dr. Stoltzfus indicated that Plaintiff is markedly limited in his ability to respond appropriately to work situations and changes in routine in a work setting, indicating that based on Plaintiff's report, he cannot sustain

focus for an extended time, mentally exert himself, or stay organized. Tr. 548.

In the decision, the ALJ accurately summarized Dr. Stoltzfus's opinion and gave it "some weight." The ALJ specifically found that Plaintiff's ability to perform simple, routine work that is not fast-paced is consistent with Dr. Stoltzfus's assessment, and found that limiting Plaintiff to superficial social contact with co-workers and supervisors and no cooperation or coordination adequately accounts for Plaintiff's limitations with attention and concentration. The ALJ also specifically discounted Dr. Stoltzfus's assessed limitations with sustainability because they were based on Plaintiff's discredited subjective reports. The ALJ's findings are wholly supported by substantial evidence, and are a valid reason to partially discount Dr. Stoltzfus's opinion. *Bray*, 554 F.3d at 1228; Tr. 546, 548. Second, the ALJ partially discounted Dr. Stoltzfus's opinion because it is inconsistent with Plaintiff's activities, which establish greater functioning than alleged. As discussed at length above, Plaintiff engages in numerous activities such as working, volunteering, and running a business, which undermine his allegations of greater limitations. Therefore, the ALJ has provided specific and legitimate reasons, backed by substantial evidence, for partially discounting Dr. Stoltzfus's opinion. The ALJ did not err.

### C.    *ALJ Lynch Properly Discredited Lay Testimony*

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine*, 574 F.3d at 694.

Plaintiff argues that the ALJ has failed to properly credit the lay witness testimony of his father Louis Meza. Mr. Meza completed a Third Party Function Report, attesting to Plaintiff's various impairments. Tr. 154-61. Mr. Meza provided that Plaintiff has trouble staying on task, loses focus, needs reminders to take care of personal needs and grooming, has a short attention span, has difficulty finishing what he starts, and has difficulty handling stress and changes in routine. Tr. 156-57, 159. Mr. Meza also indicated that Plaintiff has issues with memory, completing tasks, concentration, understanding, following instructions, and getting along with others. Tr. 159.

The ALJ accurately discussed Mr. Meza's testimony and gave it "some weight." Tr. 269. The ALJ found that Mr. Meza's report was "accounted for in large part by the residual functional capacity assessment for simple, routine work that is not fast paced and requires limited social interaction." Tr. 269. However, the ALJ discounted Mr. Meza's testimony because Plaintiff's activities establish greater functioning than alleged, including Plaintiff's ability to live independently and engaging in work activity. Tr. 269.

Here, I conclude the ALJ provided a germane reason for partially discounting Mr. Meza's testimony and is supported by substantial evidence. As discussed above, Plaintiff has lived independently, engages in numerous activities such as waiting tables, running an advertising business, and volunteering at a drop-in shelter. Tr. 530. Plaintiff has no difficulty using public transportation, is capable of obtaining work, and frequents local coffee shops. Tr. 530. The ALJ's findings are supported by substantial evidence in the record as a whole. Because the ALJ has provided reasons germane to Mr. Meza for partially discounting his testimony, the ALJ did not err.

## III.    ALJ's RFC Reasonably Accounts for All Credited Limitations

Plaintiff argues that the RFC fails to account for all of his functional limitations, including

his need for extra breaks and instruction, impulse control, his intermittent explosive disorder, sustained concentration and persistence, and social interaction as diagnosed by Drs. Guastadisegni and Freed. The RFC is the most a claimant can do despite his limitations and must include all credited limitations supported by substantial evidence in the record. *See Bayliss*, 427 F.3d at 1217. Similarly, the hypothetical question posed to the VE need only include those functional limitations supported by substantial evidence. *Id.* Where the ALJ credits the opinion of a physician, the ALJ must translate the claimant's condition as described in the physician's opinion into functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

Here, Plaintiff appears to contend that the RFC fails to include all of the functional limitations assessed by Drs. Guastadisegni and Freed. However, as thoroughly discussed above, the ALJ did not err in discounting those opinions, and therefore was not required to include discounted limitations. For example, the ALJ specifically indicated that Plaintiff's alleged angry outbursts were not supported by the objective medical evidence, did not require treatment, and thus were not accounted for in the RFC. Tr. 268. And, the ALJ incorporated Plaintiff's alleged distractability, difficulty with appropriate social functioning, and need for breaks into the RFC by limiting him to simple, routine work with limited cooperation and coordination. Indeed, the ALJ expressly excluded Plaintiff's alleged sustainability limitations because they were premised on his discounted subjective limitations. Tr. 269.

An ALJ's RFC need not correspond precisely to a physician's limitations; rather, the ALJ must resolve ambiguities in the record and translate Plaintiff's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson*, 539 F.3d at 1174. In short, in this case, the RFC includes all limitations credited by the ALJ and supported by substantial evidence in the record, and is a

24 - OPINION AND ORDER

reasonable interpretation of the record. *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015).

Therefore, the ALJ did not err in fashioning the RFC, and the subsequent hypothetical posed to the

VE included all credited limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001)

(holding an ALJ may "limit a hypothetical to those impairments that are supported by substantial

evidence in the record.")

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to Plaintiff

is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this ___8___ day of MARCH, 2017.


*Malcolm F Marsh*
Malcolm F. Marsh
United States District Judge

25 - OPINION AND ORDER